## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN FOOTE (aka Kevin Kelly), Individually and on behalf of all others similarly situated; <br><br> BRANDON TATE, Individually and on behalf of all others similarly situated; and <br><br> BRENT TATE, Individually and on behalf of all others similarly situated; <br><br>     Plaintiffs, <br><br> v. <br><br> ALL ELITE WRESTLING, LLC; <br><br> IAN RICCABONI; and <br><br> TONY KHAN; <br><br>     Defendants. | Civil Action No. 2:24-cv-05351 |

**DEFENDANTS' OMNIBUS MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TRANSFER VENUE, OR COMPEL ARBITRATION AND DISMISS PLAINTIFFS' COMPLAINT**

Defendants, All Elite Wrestling, LLC ("AEW"), Ian Riccaboni, and Tony Khan, through their undersigned counsel, pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) and the Federal Arbitration Act, 9 U.S.C. §§ 3, 4,[1] and for the reasons set forth in the accompanying Memorandum of Law in Support of Defendants' Omnibus Motion, respectfully move this Court for an Order: (1) dismissing Plaintiffs Kevin Foote, Brandon Tate, and Brent Tate's claims for

---

[1] The Federal Arbitration Act authorizes this Court to dismiss the action. 9 U.S.C. §§ 3, 4; *Blair v. Scott Specialty Gases*, 283 F.3d 595, 600 (3d. Cir. 2002). As an additional basis, and to the extent necessary, Defendants also move to dismiss under Fed. R. Civ. P. 12(b)(6) due to the existence of a valid and binding arbitration provision.

improper venue; and (2) enforcing the parties' agreement to arbitrate their disputes; or, in the alternative, transferring this case to the appropriate venue, the United States District Court for the Middle District of Florida, Jacksonville Division.

Respectfully submitted,

Dated: <u>October 11, 2024</u>

**JACKSON LEWIS P.C.**

By:  <u>*/s/ Daniel F. Thornton*</u>
B. Tyler White*
Tyler.White@jacksonlewis.com
James D. McGuire*
James.McGuire@jacksonlewis.com
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
904-638-2655

Daniel F. Thornton (PA No. 318431)
Daniel.Thornton@jacksonlewis.com
Caralyn M. Reese (PA No. 330726)
Caralyn.Reese@jacksonlewis.com
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
267-319-7802

*Counsel for Defendants*

*admitted *pro hac vice*

## <u>CERTIFICATE OF CONFERRAL</u>

I, B. Tyler White, certify that, following entry of the Court's Order requiring pre-motion conferral on October 7, 2024 (ECF No. 3), I contacted Plaintiffs' counsel by phone and electronic mail to set up a conference.  On October 8, 2024, I verbally conferred with Plaintiffs' counsel Benjamin J. Baer regarding the substance of the instant motion.  Despite these efforts, the Parties were unable to resolve the issues addressed in the instant motion.  Although the Court's Order contemplates only part of this Omnibus Motion, Defendants are filing it in advance of the Court's seven-day conferral deadline because of the October 11, 2024, deadline to respond to Plaintiffs' Complaint, and because the Parties have determined that they will be unable to resolve any of the relief sought by this Omnibus Motion without judicial intervention.


Dated: <u>October 11, 2024</u>                                    */s/ B. Tyler White*
                                                                        B. Tyler White

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 11, 2024, I caused a copy of the foregoing document to be served

on the following counsel of record via electronic filing:

Benjamin J. Baer, Esquire
bbaer@injurylawpartners.com
**INJURY LAW PARTNERS**
1628 JFK Blvd, Suite 1302
Philadelphia, PA 19103
215-402-2442

Stephen P. New, Esquire
steve@newlawoffice.com
**STEPHEN NEW & ASSOCIATES**
430 Harper Park Dr.
Beckley, WV 25801
304-250-6017

*/s/ Daniel F. Thornton*
Daniel F. Thornton

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN FOOTE (aka Kevin Kelly), Individually and on behalf of all others similarly situated;<br><br>BRANDON TATE, Individually and on behalf of all others similarly situated; and<br><br>BRENT TATE, Individually and on behalf of all others similarly situated;<br><br>       Plaintiffs,<br><br>v.<br><br>ALL ELITE WRESTLING, LLC;<br><br>IAN RICCABONI; and<br><br>TONY KHAN;<br><br>       Defendants. | Civil Action No. 2:24-cv-05351 |

**BRIEF IN SUPPORT OF DEFENDANTS' OMNIBUS MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TRANSFER VENUE, OR COMPEL ARBITRATION AND DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

LEGAL ARGUMENT ........................................................................................................ 7

I.      THE COURT MUST DISMISS THIS ACTION BECAUSE VENUE IN THE
EASTERN DISTRICT OF PENNSYLVANIA IS IMPROPER UNDER
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3). ...................................... 7

II.    IF THE COURT CONCLUDES THAT VENUE IS OTHERWISE PROPER,
THE COURT SHOULD TRANSFER THIS CASE TO THE MIDDLE
DISTRICT OF FLORIDA UNDER 28 U.S.C. § 1404(a). .............................. 11

      A.    Venue is Proper in the Middle District of Florida, Jacksonville Division
under 28 U.S.C. § 1319(b). ..................................................................... 11

      B.    The Interests of Justice Require Transfer Because Plaintiffs Agreed to
Resolve All Disputes in Duval County, Florida. ..................................... 11

               1.    Plaintiffs' Contracts with AEW Each Contain Enforceable Forum-
Selection Clauses. ....................................................................... 12

               2.    Transfer Under § 1404(a) is Required. ....................................... 14

                        a.    Practical Considerations that Could Make the Trial Easy,
Expeditious, or Inexpensive .......................................... 14

                        b.    Familiarity of the Trial Judge with the Applicable State
Law ................................................................................ 15

                        c.    Private Interests as to Defendant Riccaboni ................... 15

      C.    The Convenience of the Parties and the Interests of Justice Otherwise
Weigh Heavily in Favor of Transfer Under 28 U.S.C. § 1404(a). ......... 16

III.   PLAINTIFFS' AGREEMENTS TO ARBITRATE MUST BE ENFORCED AND
THIS SUIT DISMISSED OR, IN THE ALTERNATIVE, STAYED............................. 16

      A.    The FAA Mandates Enforcement of Plaintiffs' Arbitration Agreements............. 18

      B.    The Parties Entered Into Valid and Binding Arbitration Agreements for
Any Disputes Arising Out of Their Agreements with AEW, Including All
Claims Alleged in This Suit.................................................................... 19

               1.    The Arbitration Agreement Unequivocally and Indisputably
Delegates the Threshold Issue of Arbitrability to the Arbitrator. ............. 19

               2.    The Agreements to Arbitrate are Valid..................................................... 23

               3.    All of Plaintiffs' Claims are Arbitrable. ................................................... 24

               4.    The Arbitration Agreements are not Unconscionable. ............................. 25

CONCLUSION.................................................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adler v. Gruma Corp.*,
2023 U.S. Dist. LEXIS 202610, at *24 (D.N.J. Nov. 13, 2023)................................ 22

*Arnold v. HomeAway, Inc.*,
890 F.3d 546 (5th Cir. 2018) ................................ 21

*AT&T Mobility, LLC v. Concepcion*,
131 S. Ct. 1740 (2011) ................................ 18

*Basulto v. Hialeah Auto.*,
141 So.3d 1145 (Fla. 2014)................................ 27, 28

*Beall v. REICO Kitchen & Bath*,
No.23-2330, 2023 U.S. Dist. LEXIS 191825, at *5
(E.D. Pa. Oct. 24, 2023)................................ 8

*Bockman v. First Am. Mktg. Corp.*,
459 F. App'x 157 (11th Cir. 2012) ................................ 10, 11

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)................................ 20

*C.H. Robinson Co. v. MSC Mediterranean Shipping Co., S.A.*,
No. 2:23-cv-1384-MRP, 2024 U.S. Dist. LEXIS 57375, at *4-5
(E.D. Pa. Mar. 29, 2024)................................ 13, 14

*Caracas v. Rizen Fleet Logistics*,
2016 U.S. Dist. LEXIS 203908 (S.D. Fla. 2016)................................ 21

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
584 F. 3d 513 (3d Cir. 2009)................................ 23

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*,
709 F.2d 190 (3d Cir. 1983)................................ 13

*Cottman v. Transmission Systems, Inc. v. Martino*,
36 F.3d 291 (3d Cir. 1994)................................ 9

*Dancu v. Coopers &Lybrand*,
778 F. Supp. 832 (E.D. Pa. 1991) ................................ 24

*Dinterman v. Nationwide Mut. Ins. Co.*,
26 F. Supp. 2d 747
(E.D. Pa. 1998)................................ 8

*Direct TV, Inc. v. Imburgia*,
577 U.S. 47, 136 S. Ct. 463 (2015) ................................ 18

*Edwards v. Doordash, Inc.*,
888 F.3d 738 (5th Cir. 2018) ................................ 22

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ............................................................................ 23

*Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n Ltd.*,
108 F. App'x 3 (3d Cir. 2004) .......................................................... 24

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ............................................................................ 18

*Githieya v. Glob. Tel*Link Corp.*,
No. 1:15-CV-0986-AT, 2016 U.S. Dist. LEXIS 8573, 2016 WL 304534, at *4
(N.D. Ga. Jan. 25, 2016) .................................................................. 21

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
716 F.3d 764 (3d Cir. 2013) ............................................................ 25

*Gulf Ins. Co. v. Glasbrenner*,
417 F.3d 353 (2d Cir. 2005) ............................................................ 11

*Hall St. Assoc., LLC v. Mattel, Inc.*,
552 U.S. 576 (2008) .......................................................................... 18

*HealthPlanCRM, LLC v. AvMed, Inc.*,
No. 19-157-NR, 458 F. Supp. 3d 308, 2020 U.S. Dist. LEXIS 74187, at *3
(W.D. Pa. April 28, 2020) ............................................................... 21

*Hobby Lobby Stores, Inc. v. Cole*,
287 So. 3d 1272 (Fla. 5th Dist. Ct. App. 2020) ............................ 26

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
909 F.3d 48 (3d Cir. 2018) ...................................................... 13, 14

*Ins. Newsnet.com, Inc. v. Pardine*,
No. 11-00286, 2011 U.S. Dist. LEXIS 85825, at *9-10
(M.D. Pa. Aug. 4, 2011) .................................................................. 21

*Johnson v. Ergon W. Va., Inc.*, No. 14-453, 2015 U.S. Dist. LEXIS 120759, at *24-26
(W.D. Pa. Sept. 10, 2015) ..................................................... 13-14, 17

*Jones v. Sallie Mae, Inc.*,
No. 3:13-cv-837-J-99-MMH-MCR, 2013 U.S. Dist. LEXIS 170969, *9-12
(M.D. Dist. Fla. Dec. 4, 2013) ........................................................ 23

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995) ...................................................... 12, 14, 16

*Kruzits v. Okuma Machine Tool, Inc.*,
40 F.3d 52 (3d Cir. 1994) ................................................................ 19

*Lambert v. Signature Healthcare, LLC*,
No. 19-11900, 2022 U.S. App. LEXIS 18787, at *12-17
(11th Cir. July 8, 2022) .............................................................. 25, 28

*Lloyd v. Hovensa, LLC*,
369 F.3d 263 (3d Cir. 2004) ............................................................ 17

*Maravilla v. Gruma Corp.*
783 F. App'x 392 (5th Cir. 2019) ................................................................ 22

*McGee v. Armstrong,*
941 F.3d 859 (6th Cir. 2019) ...................................................................... 21

*Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.,*
670 F. Supp. 2d 1350 (S.D. Fla. 2009) ....................................................... 21

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
473 U.S. 614 (1985) ............................................................................ 18, 19

*Moses H. Cone v. Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) ............................................................................... 18, 19

*Nelson v. Gobrands, Inc.,*
No. 20-5424, 2021 WL 4262325, at *4
(E.D. Pa. Sept. 20, 2021) ............................................................................ 17

*Pendergast v. Sprint Nextel Corp.,*
592 F.3d 1119 (11th Cir. 2010) ................................................................... 26

*Perry v. Thomas,*
482 U.S. 483 (1987) .................................................................................... 18

*Pope v. Munroe Reg'l Med. Ctr.,*
2005 U.S. Dist. LEXIS 45871, at * 6
(M.D. Fla. Aug. 1, 2005) ............................................................................. 23

*Powertel, Inc. v. Bexley,*
743 So. 2d 570 (Fla. 1st Dist. Ct. App. 1999) ............................................. 25

*Rent-A-Center, W., Inc. v. Jackson,*
561 U.S. 63 (2010) ...................................................................................... 19

*Richardson v. Coverall N. Am., Inc.,*
No. 18-3393, 811 F. App'x. 100, 2020 U.S. App. LEXIS 13568, at *4-5
(3d Cir. April 28, 2020) ............................................................................... 21

*S. Jersey Sanitation Co. v. Applied Underwriters Captive Risk Assur. Co.,*
840 F.3d 138 (3d Cir. 2016) ........................................................................ 20

*Sarbak v. Citigroup Global Markets, Inc.,*
354 F. Supp. 2d 531 (D.N.J. 2004) .............................................................. 19

*Saul v. Seeking Alpha Inc.,*
No. 23-1405, 2023 U.S. Dist. LEXIS 208715, at *8
(D.N.J. Nov. 21, 2023) ................................................................................ 13

*Scharf v. Bitwarden,*
No. 3:23-cv-633-BJD-MCR, 2024 U.S. Dist. LEXIS 59664, at *28
(M.D. Fla. Feb. 9, 2024) .............................................................................. 27

*Seus v. John Nuveen & Co.,*
146 F.3d 175 (3d Cir. 1998) ........................................................................ 24

v

*Solis v. Am. Express Nat'l Bank*,
No: 5:23-cv-208-JSM-PRL, 2023 U.S. Dist. LEXIS 118901, at *13-16
(M.D. Fla. July 11, 2023) ............................................................................. 28

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) ......................................................................................... 18

*Terminix Intern. Co., LP v. Palmer Ranch Ltd. Partnership*,
432 F.3d 1327 (11th Cir. 2005) .................................................................... 21

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960) ..................................................................................... 18

*Volt Information Sciences, Inc. v. Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) ..................................................................................... 19

**Statutes**

28 U.S.C. § 1391(b) ................................................................................ 8, 9, 11

28 U.S.C. § 1404(a) ........................................................................ 11, 12, 14, 16

9 U.S.C. § 2 ................................................................................................... 18

9 U.S.C. § 3 & 4 ............................................................................................ 17

9 U.S.C. § 4 ................................................................................................... 24

Federal Arbitration Act .................................................................................. 17

**Rules**

Federal Rule of Civil Procedure 12(b)(3) ............................................ 1, 8, 17, 29

Federal Rule of Civil Procedure 12(b)(6) ................................... 2, 17, 25, 28, 29

Federal Rule of Civil Procedure 56 ............................................................... 25

JAMS Comprehensive Arbitration Rules and Procedures ................................. 2

JAMS Employment Arbitration Rules and Mediation Procedures ................... 20

## PRELIMINARY STATEMENT

Defendants All Elite Wrestling, LLC ("AEW"), Ian Riccaboni and Tony Khan move to dismiss Plaintiffs' Complaint for improper venue or, in the alternative, to transfer venue, or to compel arbitration and dismiss Plaintiffs' Complaint.

First, Defendants file this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(3) because Plaintiffs' commencement of this action in Philadelphia, Pennsylvania (and therefore within the Eastern District of Pennsylvania), is improper. Indeed, only one Defendant (Riccaboni) and only one named Plaintiff (Foote) are residents of Pennsylvania, a substantial part of the purported events or omissions giving rise to Plaintiffs' claims—their contracts with AEW—occurred outside of the Commonwealth, and this action could and should have been brought in the United States District Court for the Middle District of Florida, Jacksonville Division. Plaintiffs' Complaint, as filed, is an obvious tactic by Plaintiffs that will unfairly prejudice Defendants by forcing to them to incur substantial additional costs litigating this matter in Pennsylvania, and it should be dismissed in its entirety for this reason alone.

Second, should this Court decline to dismiss the Complaint for improper venue, this matter should be transferred to the Middle District of Florida, Jacksonville Division—where the substantial and material events purportedly giving rise to Plaintiffs' claims occurred and venue is proper. Significantly, Plaintiffs *agreed* to resolve all disputes underlying their Complaint in Duval County, Florida, which entirely comprises the city of Jacksonville. As set forth more fully below, Plaintiffs entered into valid, enforceable agreements with AEW that include unequivocal forum-selection clauses designating Duval County, Florida, as the locale to resolve all disputes arising from the agreements. Beyond the parties' written agreements, AEW's executive and administrative functions (*i.e.*, human resources, finance, and legal departments) operate out of Jacksonville, Florida, which is also the state of residence of Defendant Khan. All of these factors—

1

independently and cumulatively—establish that transfer is warranted not only pursuant to the governing statutory authority, but in the interests of justice and convenience of the parties.

Third, and in the alternative (beyond the obvious venue problems), this Court should enforce Plaintiffs' agreements with AEW, compel all claims in Plaintiffs' Complaint to arbitration, and dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs agreed to arbitrate all of their claims arising out of or relating to their contracts with AEW. In violation of the arbitration provisions of their agreements with AEW, Plaintiffs commenced the instant action asserting nine causes of action against Defendants, including claims for declaratory judgment, breach of contract, tortious interference with a contract or business relationship, defamation, and false light—all of which relate to or arise out of the parties' agreements.

Therefore, should this Court decline to dismiss or transfer this case because it was filed in an improper venue, then Plaintiffs must be compelled to arbitrate all of their claims in Duval County, Florida, consistent with the JAMS Comprehensive Arbitration Rules and Procedures as set forth in Section 16.1 of their respective agreements with AEW.

For all of these reasons, Defendants respectfully move for an order dismissing Plaintiffs' Complaint for improper venue. In the alternative, Defendants move for an order transferring venue to the Middle District of Florida, Jacksonville Division, or dismissing this case and compelling Plaintiffs to arbitrate all claims against Defendants.

## **STATEMENT OF FACTS**[2]

This putative class action arises out of Plaintiffs' agreements with Defendant AEW that were entered into by the parties in June and August 2023. Plaintiffs, Kevin Foote, Brandon Tate

---

[2] The facts set forth in Plaintiffs' Complaint will be assumed true for the purposes of this Motion and Memorandum of Law only. However, Defendants vehemently deny the allegations of the Complaint and reserve the right to challenge each and every allegation (factual or otherwise) contained therein.

and Brent Tate, were formerly contracted Non-Wrestling Talent (in the case of Foote) or Wrestlers (in the case of the Tates) for AEW. At all times material hereto, Plaintiffs (and all putative class members) were properly classified as independent contractors under their respective Talent or Wrestling Agreements. In addition to AEW, Plaintiffs name AEW's Chief Executive Officer, General Manager, and Head of Creative, Tony Khan, and one of AEW's Non-Wrestling Talent, Ian Riccaboni, as co-Defendants. The facts pertaining to each party are as follows:

1.     **Defendant AEW**

Defendant AEW is a Delaware Limited Liability Company with its principal place of business in Jacksonville, Florida. (*See* Compl. at ¶ 6). AEW is a professional wrestling promotion company providing wrestling entertainment live and through various media *Id.* at ¶ 7. AEW is also engaged in the promotion and sale of wrestling-related merchandise. *Id.*

Founded in 2019, AEW offers an alternative to mainstream wrestling, with a roster of world-class talent that injects new spirit, freshness, and energy into the industry. AEW is built to create moments of a lifetime—memorable, inspiring, and spectacular—by providing its fans with the best wrestling matches and entertainment anywhere.

Plaintiffs assert causes of action against AEW for declaratory judgment, breach of the Talent and Wrestling Agreements, defamation, false light, and tortious interference with contract or business relationship. (*See* Compl. at Counts I through VI, & VIII).

2.     **Defendant Tony Khan**

Defendant Antony ("Tony") Khan is a resident of Jacksonville, Florida. (*See* Compl. at ¶ 10). Khan is the CEO, General Manger, and Head of Creative of AEW. *Id.* Plaintiffs Brandon Tate and Brent Tate assert causes of action against Defendant Khan for defamation and false light. (*See* Compl. at Count IX).

3

### 3.    <u>Defendant Ian Riccaboni</u>

Defendant Ian Riccaboni is a resident of Allentown, Pennsylvania. (*See* Compl. at ¶ 8). Riccaboni is a professional wrestling commentator and broadcaster who most recently contracted with AEW as Non-Wrestling Talent on or about July 1, 2023. *See* Ian Riccaboni's Talent Agreement, attached as **Exhibit A** at 1.  Plaintiff Kevin Foote asserts causes of action against Defendant Riccaboni for defamation, false light, and tortious interference with contract or business relationship.  (*See* Compl. at Counts VI & VII).

### 4.    <u>Plaintiff Kevin Foote</u>

Plaintiff Kevin Foote is a resident of Dillsburg, Pennsylvania and a professional wrestling commentator who entered into an "All Elite Wrestling Independent Contractor Talent Agreement" ("Talent Agreement") with AEW on June 12, 2023. (*See* Compl. at ¶¶ 1, 2, 26). The Talent Agreement provides that Foote was obligated, in part, to participate in all events that AEW chose to book for him, either as an individual or as a member of a group. *Id.* at ¶ 28. Specifically, Foote was required to provide services for up to 80 events per year. *Id.* at ¶ 41. The Talent Agreement was to continue in full force and effect for a term of three years, and was due to expire on June 30, 2026. *Id.* at ¶ 26. At the same time, AEW retained the right to terminate the Talent Agreement at any time for any reason. *Id.* at ¶ 42. On March 6, 2024, AEW terminated its Agreement with Foote. *Id.* at ¶ 56. At all times material hereto, Foote's status under the Talent Agreement was that of an independent contractor.

A. **Plaintiff Foote Agreed to Arbitrate Any Dispute Relating to Any Matter Arising Out of His Talent Agreement.**

On June 12, 2023, Kevin Foote executed a Talent Agreement with AEW. (*See* Ex. A to Compl. at p. 21).[3] The Talent Agreement requires that Plaintiff Foote arbitrate:

> any dispute relating to any matter arising under this Agreement or any dispute concerning the performance, application or interpretation of any provision of this Agreement (including, without limitation, the application of this Section 16 to any dispute).

(Ex. A to Compl. at § 16.1). Specifically, the Talent Agreement provides that any such disputes are to be resolved "for final, binding, and conclusive arbitration conducted before a single arbitrator in Duval County, Florida and administered by JAMS, Inc. pursuant to its Comprehensive Arbitration Rules and Procedures. *Id.* Plaintiff Foote had the opportunity to review the Talent Agreement, and ultimately, on June 12, 2023, executed the same thereby agreeing to be bound by the Agreement's terms. Because Plaintiff Foote's claims are subject to a valid arbitration provision, the Court should dismiss the Complaint as to Plaintiff Foote's claims and order him to arbitrate his disputes with Defendants.

B. **Plaintiff Foote Breached His Arbitration Agreement by Filing this Lawsuit.**

Notwithstanding his voluntary agreement to arbitrate any disputes relating to any matters arising under the Talent Agreement, Plaintiff Foote filed his Complaint with the Court of Common Pleas of Philadelphia County, Pennsylvania on August 30, 2024, asserting seven causes of action against Defendants including claims for declaratory judgment, breach of contract, tortious interference with contract or business relationship, defamation, and false light. Because all of Plaintiff Foote's claims fall within the express terms of the arbitration provision of the Talent

---

[3] The unredacted versions of the Complaint and Plaintiffs' respective agreements are forthcoming upon the entry of an order granting Defendants' currently pending Motion to Seal. (*See* D.E. #5).

Agreement, all of his claims are due to be dismissed because Foote unequivocally agreed to submit those claims to binding arbitration.

**5.**   **Plaintiffs Brandon and Brent Tate**

Brandon and Brent Tate, better known as the "Tate Twins," or "The Boys,"[4] are residents of Knoxville, Tennessee and are a professional wrestling tag team who entered into separate "All Elite Wrestling Independent Contractor Wrestling Agreement[s]" ("Wrestling Agreements") with AEW on August 23, 2023. (*See* Compl. at ¶¶ 3-5, 57, 58). Their respective Wrestling Agreements provided that the Tate Twins were obligated, in part, to participate in all events that AEW chose to book for them, with the number of events varying each year. *Id.* at ¶ 61. Specifically, the Tate Twins were required to engage in a minimum of 80 in-ring wrestling events for the first year and 100 events for the second year. *Id.* at ¶ 74. The Wrestling Agreements were to continue in full force and effect until July 31, 2025, though at the discretion of AEW they could be extended through July 31, 2026. *Id.* at ¶¶ 57, 58. At the same time, AEW retained the right to terminate the Agreements at any time for any reason. *Id.* at ¶ 75. According to the Complaint, on April 1, 2024, AEW terminated its Agreements with the Tate Twins due to budget cuts. *Id.* at 89. At all times material hereto, each of the Tate Twins' status under the Wrestling Agreements was that of an independent contractor.

**A.**   **Plaintiffs Brandon and Brent Tate Agreed to Arbitrate Any Dispute Relating to Any Matter Arising Out of Their Wrestling Agreements.**

On August 23, 2023, Brandon and Brent Tate executed separate Wrestling Agreements with AEW. (*See* Ex. B to Compl.). The Wrestling Agreements require that Plaintiffs Brandon and Brent Tate arbitrate:

> any dispute relating to any matter arising under [the] Agreement[s] or any dispute concerning the performance, application or

---

[4] https://en.wikipedia.org/wiki/Tate_Twins

> interpretation of any provision of the Agreement[s] (including,
> without limitation, the application of this Section 16 to any dispute).

(Ex B. to Compl. at § 16.1). Specifically, the Wrestling Agreements provide that any such disputes are to be resolved "for final, binding, and conclusive arbitration conducted before a single arbitrator in Duval County, Florida and administered by JAMS, Inc., pursuant to its Comprehensive Arbitration Rules and Procedures. *Id.* Plaintiffs Brandon and Brent Tate had the opportunity to review their respective Wrestling Agreements, and ultimately, on August 23, 2023, executed the same, thereby agreeing to be bound by the Agreements' terms. Because the Tate Twins' claims are subject to a valid arbitration provision, the Court should dismiss the Complaint as to their claims and order them to arbitrate their disputes with Defendants.

### B. Plaintiffs Brandon and Brent Tate Breached Their Arbitration Agreements by Filing this Lawsuit.

Notwithstanding their voluntary agreement to arbitrate any disputes relating to any matters arising under the Wrestling Agreements, Plaintiffs Brandon and Brent Tate filed their Complaint with the Court of Common Pleas of Philadelphia County, Pennsylvania on August 30, 2024, asserting five causes of action against Defendants including claims for declaratory judgment, breach of contract, defamation, and false light. Because all of the Tate Twins' claims fall within the express terms of the arbitration provisions of the Wrestling Agreements, all of their claims should be dismissed because the Tate Twins unequivocally agreed to submit those claims to binding arbitration.

### LEGAL ARGUMENT

### I. THE COURT MUST DISMISS THIS ACTION BECAUSE VENUE IN THE EASTERN DISTRICT OF PENNSYLVANIA IS IMPROPER UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3).

Venue is improper in the Eastern District of Pennsylvania and this Court must dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(3).  Plaintiffs "bear[] the burden of

proving that venue is proper." *Dinterman v. Nationwide Mut. Ins. Co.*, 26 F. Supp. 2d 747, 749 (E.D. Pa. 1998). Binding statutory authority and case law interpreting the same provides that venue is proper only in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Here, Sections 1391(b)(1) and (3) are inapplicable. It is clear from the face of the Complaint and Defendants' Notice of Removal that all Defendants do not reside in the same state because Defendant Riccaboni is the only Pennsylvania resident while the remainder of the Defendants are citizens of Delaware and Florida. Accordingly, subsection (1) cannot apply here. Subsection (3) is equally inapplicable because this action could and should have been initiated in Duval County, Florida. Therefore, the Court need only determine whether "a substantial part of the events or omissions giving rise to" Plaintiffs' Class Action Complaint occurred in the Eastern District of Pennsylvania under Section 1391(b)(2). Plaintiffs cannot overcome this burden.

To meet the requirements of Section 1391(b)(2), Plaintiffs must show that "events or omissions giving rise to the claim" took place in the Eastern District of Pennsylvania, **NOT**—as Plaintiffs have insufficiently alleged in the Complaint—that Defendants have sufficient minimum contacts with Pennsylvania, which is the appropriate analysis for determining personal jurisdiction. *See Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). In the Complaint, Plaintiffs assert in a vague and conclusory fashion that "[v]enue is proper in Philadelphia County, Pennsylvania" because "the Defendants regularly conduct business within

8

Philadelphia County, a transaction or occurrence took place in Philadelphia County out of which this cause of action arose, and/or part of all of [sic] a cause of action arose in Philadelphia County as detailed herein." (Compl. at ¶ 15).

In purported support of this assertion, Plaintiffs allege that "AEW previously held events in Pittsburgh, Allentown, State College, and Philadelphia, Pennsylvania," that "AEW has upcoming events scheduled in Wilkes-Barre and Pittsburgh, Pennsylvania in 2024," that AEW's subsidiary, Ring of Honor ("ROH") held approximately thirty events in Pennsylvania cities from 2002 to 2023, and that ROH held its "Supercard of Honor 2024" event in Philadelphia. (Compl. at ¶¶ 22-25). Not one of these allegations, however, has anything to do with the "substantial part of the events or omissions giving rise to" the claims asserted in Plaintiffs' Complaint for the purpose of establishing proper venue. Rather, Plaintiffs appear to be setting out a personal jurisdiction analysis, which is separate and distinct issue from venue. *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 160-61 (11th Cir. 2012) (holding that arguments directed at questions of personal jurisdiction are insufficient to address the court's concerns on venue). Indeed, like in *Bockman*, Plaintiffs merely detail the general contacts of only one Defendant, AEW, with Pennsylvania, which alone is insufficient to meet the burden required by Section 1391(b)(2). *Id.* Therefore, Plaintiffs' Complaint fails to allege that venue is proper in the Eastern District of Pennsylvania and must be dismissed as a result. *See id.*

Moreover, the remainder of the allegations in Plaintiffs' Complaint prove that venue in the Eastern District of Pennsylvania—or any court in Pennsylvania for that matter—is improper. The Complaint comprises nine counts arising under six legal theories, namely: (1) Declaratory Judgment Finding the Arbitration Clause Invalid (against AEW); (2) Declaratory Judgment Finding that Plaintiffs are Employees of AEW (against AEW); (3) Declaratory Judgment Finding

the Restrictive Covenant in Section 6.1 of Each of the Agreements is Unenforceable (against AEW); (4) Breach of Contract (Talent Agreement) (against AEW); (5) Breach of Contract (Wrestler Agreement) (against AEW); (6) Defamation and False Light (Plaintiff Foote against Defendants Riccaboni and AEW); (7) Tortious Interference with Contract or Business Relationship (Plaintiff Foote against Defendant Riccaboni); (8) Tortious Interference with Contract or Business Relationship (Plaintiff Foote against Defendant AEW); and (9) Defamation and False Light (Plaintiffs Brandon and Brent Tate against Defendant Tony Khan).

Unsurprisingly, none of the facts Plaintiffs allege in support of the foregoing counts and legal theories have anything to do with Pennsylvania, much less Philadelphia County, except for the allegation that Defendants Khan and Riccaboni's allegedly defamatory statements were published in Pennsylvania. (Compl. at ¶¶ 218 & 262). The focal point of Plaintiffs' lawsuit concerns their contracts with AEW. Indeed, Plaintiffs' contract-related claims span seven out of nine of the Complaint's counts. Meanwhile, their defamation and false light-related allegations comprise a significantly lesser portion—only 51 out of the Complaint's 267 paragraphs. Moreover, Plaintiffs' contracts were negotiated, drafted, entered into, and terminated by AEW primarily from Jacksonville, Florida; therefore, the purported events giving rise to Plaintiffs' claims bear a strong relationship to Florida, little, if any, relationship to Pennsylvania. *See* Declaration of Chris Harrington, attached as **Exhibit B** at ¶¶ 4-9; *see also* Declaration of Ian Riccaboni, attached as **Exhibit C** at ¶¶ 4-5. Therefore, Plaintiffs have not sufficiently or plausibly alleged that the "'*significant* events or omissions *material*'" to their claims occurred in this district, and the Court must dismiss their claims as a result. *Bockman*, 459 F. App'x at 162 (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).

**II.   IF THE COURT CONCLUDES THAT VENUE IS OTHERWISE PROPER, THE COURT SHOULD TRANSFER THIS CASE TO THE MIDDLE DISTRICT OF FLORIDA UNDER 28 U.S.C. § 1404(a).**

The interest of justice and the convenience of the parties require the Court to transfer this case to Middle District of Florida, Jacksonville Division, for the following reasons. As a preliminary matter, pursuant to 28 U.S.C. § 1391(b), venue is proper in the Middle District of Florida. Second, pursuant to 28 U.S.C. § 1404(a), the agreements between Plaintiffs and AEW contain enforceable forum-selection language providing that all disputes are to be resolved in Duval County, Florida. Therefore, the interests of justice require transfer. Finally, also pursuant to 28 U.S.C. § 1404(a), the Court should exercise its discretion to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice" because Plaintiffs could have and should have initially brought this suit in the Middle District of Florida,[5] but deliberately chose otherwise to make it more burdensome for Defendants to litigate. Defendants will address each item in turn.

**A.   Venue is Proper in the Middle District of Florida, Jacksonville Division under 28 U.S.C. § 1319(b).**

As previously stated, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). For the reasons stated in Section I above, the substantial and material events giving rise to Plaintiffs' claims occurred in Jacksonville, Florida.

**B.   The Interests of Justice Require Transfer Because Plaintiffs Agreed to Resolve All Disputes in Duval County, Florida.**

The Court must transfer venue in the interests of justice pursuant to 28 U.S.C. § 1404(a) because Plaintiffs' contracts with AEW contain a valid forum-selection clause. As the Third

---

[5] As a practical matter, Plaintiffs should have only filed a demand for arbitration, however, the point stands that if their intention was to file suit, it should have been in Jacksonville, Florida.

11

Circuit has stated, an enforceable forum-selection clause "is treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995).

  **1.  Plaintiffs' Contracts with AEW Each Contain Enforceable Forum-Selection Clauses.**

  In this Circuit, "the enforceability of a forum selection clause is determined by a generally applicable federal law." *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 201 (3d Cir. 1983). The rule is that "a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Id.* at 202; *C.H. Robinson Co. v. MSC Mediterranean Shipping Co., S.A.*, No. 2:23-cv-1384-MRP, 2024 U.S. Dist. LEXIS 57375, at *4-5 (E.D. Pa. Mar. 29, 2024). To make this showing, the opposing party bears a high burden of proof. *See Saul v. Seeking Alpha Inc.*, No. 23-1405, 2023 U.S. Dist. LEXIS 208715, at *8 (D.N.J. Nov. 21, 2023).

  Further, Plaintiffs' contracts with AEW each contain the following relevant language:

  16. DISPUTE RESOLUTION

  16.1. Subject to the last sentence of this Section 16 and AEW's right to seek injunctive or equitable relief pursuant to Section 15.1 above, Talent [or Wrestler] agrees that all disputes between Talent [or Wrestler] and AEW, including, without limitation, any dispute relating to any matter arising under this Agreement or any dispute concerning the performance, application or interpretation of any provision of this Agreement (including, without limitation, the application of this Section 16 to any dispute), shall be resolved for final, binding, and conclusive arbitration conducted before a single arbitrator in Duval County, Florida.

(*See, e.g.*, Ex. A to Compl. at § 16.1 (an identical provision can also be found in each of the Tate Twins' agreements)).

For the reasons explained throughout this brief, Plaintiffs are unable to argue that elements one and two above apply because they cannot and do not assert in this action that the parties did not freely and voluntarily enter into the subject Agreements, which they did. Regarding element three, it cannot be said that litigation in the Middle District of Florida would be so inconvenient so as to be unreasonable because, as explained in the foregoing sections and in greater detail below, Plaintiffs' lawsuit has a stronger connection to Jacksonville, Florida, than it does to Philadelphia, Pennsylvania, where it has very little, if any, connection at all. Therefore, the Agreements between the parties require transfer to the appropriate forum in Jacksonville.

Defendants anticipate that, as an initial matter, Plaintiffs may argue that the Dispute Resolution provision does not and cannot double as a forum-selection provision. However, it does, and Plaintiffs unequivocally agreed to have any matter arising under the agreements or any disputes regarding the agreements resolved in Duval County, Florida. *See Johnson v. Ergon W. Va., Inc.*, No. 14-cv-453, 2015 U.S. Dist. LEXIS 120759, at *24-26 (W.D. Pa. Sept. 10, 2015) (transferring the case from the Western District of Pennsylvania to the Southern District of Mississippi, holding that a forum-selection provision contained within an arbitration agreement is relevant "as a private manifestation of the parties' preferences on venue"). Therefore, it follows that the parties expressly intended for any and all disputes arising thereunder—including those improperly initiated in a judicial forum—to be resolved in Duval County, Florida. *See In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 60 (3d Cir. 2018) (holding that the parties' intent, as reflected by the language of a contract, is the "touchstone" of interpreting a contract provision at issue).

13

2.      **Transfer Under § 1404(a) is Required.**

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a). "A court contemplating a transfer typically conducts a balancing test, weighing the private and public interests protected by the language of § 1404(a)." *C.H. Robinson*, 2024 U.S. Dist. LEXIS 57375, at *5 (internal citations and quotation marks omitted). However, when a valid forum-selection clause is in play, the traditional analysis under Section 1404(a) is modified in two important ways: (1) the district court gives no weight to the plaintiff's choice of forum; and (2) the district court considers only public interest factors for signatory parties to the contract, as opposed to the signatory parties' private interests. *Id.* at *6; *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d at 57 . Here, Defendants Khan and, by association, AEW, are signatory parties to Plaintiffs' contracts. For this reason, the Court need only analyze the public interest factors under *Jumara* as it applies to them, and it will need to analyze both private and public factors as it pertains to Defendant Riccaboni. *See Jumara*, 55 F.3d at 879-80.

a.      *Practical Considerations that Could Make the Trial Easy, Expeditious, or Inexpensive*

This factor weighs in favor of Defendants because Defendants Khan and AEW are both physically located in Jacksonville, Florida, and Defendant Riccaboni reports to Florida to perform some duties under his own contract with AEW. Further, Plaintiff Foote is the only plaintiff who is a citizen of Pennsylvania, and Brandon and Brent Tate are citizens of Tennessee. Moreover, the vast majority of AEW's witnesses with knowledge of all of Plaintiffs' contract-related claims are located in Jacksonville, Florida. *See* **Exhibit B** at ¶¶ 4-5; **Exhibit C** at ¶¶ 4-5. Therefore, the only witnesses in this case who could reasonably be expected to be present in this jurisdiction at any

14

given time are Defendant Riccaboni and Plaintiff Foote. It follows that trial would be significantly less expensive for Defendants collectively if this litigation were to take place in the Middle District of Florida.

### b.   *Familiarity of the Trial Judge with the Applicable State Law*

Without question, Plaintiffs agreed that Florida law governs all aspects of their contracts with AEW. (*See, e.g.*, Ex. A to Compl. at § 17.8 (an identical provision can also be found in each of the Tate Twins' agreements)). AEW's principal place of business is in Jacksonville, Florida, and, as a result, AEW performed significant duties concerning the formation and performance under the agreements from Jacksonville, such as, without limitation, issuing payments to Plaintiffs. *See* **Exhibit B** at ¶¶ 3-4. Moreover, Plaintiffs' agreements with AEW, much like this lawsuit, have little, if anything, to do with Pennsylvania aside from the fact that Plaintiff Foote and Defendant Riccaboni are Pennsylvania residents. *See, e.g., id.* at ¶ 9. Therefore, this dispute is best situated to take place in a Florida-based forum.

### c.   *Private Interests as to Defendant Riccaboni*

Defendant Riccaboni has a strong interest in having this case tried in the Middle District of Florida because of his contractual relationship and defense agreement with Defendant AEW and its counsel. If required to retain his own counsel against Plaintiffs defending against a class action case in federal court, Defendant Riccaboni would incur significant and burdensome expenses. Moreover, because Plaintiffs chose to bootstrap claims against Defendant Riccaboni to their contract-related lawsuit against AEW, Defendant Riccaboni would incur the unnecessary expense of having to pay his own counsel to respond to a 267-paragraph complaint, assert his position in all motion practice conducted throughout the pendency of this action, and defend him through dispositive motions and trial. Therefore, considering all of the foregoing factors in light

of Plaintiffs' forum-selection agreement, this Court should transfer the case to the Middle District of Florida, Jacksonville Division.

C.   **The Convenience of the Parties and the Interests of Justice Otherwise Weigh Heavily in Favor of Transfer Under 28 U.S.C. § 1404(a).**

In the unlikely event that the Court determines that the forum-selection clause is not enforceable, which it is, Defendants reiterate and incorporate by reference as if fully restated herein the relevant considerations discussed in subsections A and B above, and also add the following private *Jumara* factors as they pertain to Defendants Khan and AEW:

It is apparent that all Defendants prefer to litigate this case in the Middle District of Florida by the nature of the instant Omnibus Motion. However, it is paramount that the contractual business relationships between all putative class-plaintiffs and all Defendants is central to Jacksonville, Florida. Defendant Khan and the vast majority of AEW's applicable business units, including its executive and administrative employees, who were required to perform essential functions to negotiate, enter into, and carry out AEW's duties under the agreements, are located in Jacksonville, Florida. *See* **Exhibit B** at ¶¶ 4-9; *see also* **Exhibit C** at ¶¶ 4-5. Moreover, as previously stated, the events giving rise to the focal point and the bulk of Plaintiffs' claims, *i.e.*, the termination of their contracts with AEW, arose in Jacksonville, Florida. Ex. B at ¶¶ 7-8. Notwithstanding Plaintiffs' false light and defamation claims, this action simply did not arise elsewhere. Therefore, the Court should transfer this action to the Middle District of Florida, Jacksonville Division.

III.   **PLAINTIFFS' AGREEMENTS TO ARBITRATE MUST BE ENFORCED AND THIS SUIT DISMISSED OR, IN THE ALTERNATIVE, STAYED.**

If the Court does not dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(3) or transfer venue, which it should because it is without authority to compel arbitration outside of the Eastern District of Pennsylvania, *see, e.g.*, *Johnson*, 2015 U.S. Dist. LEXIS 120759, at *22-23

("A Western District of Pennsylvania Court may not compel arbitration outside of the Western District of Pennsylvania.") (collecting authorities), this Court must, in the alternative, enforce Plaintiffs' agreements to arbitrate their claims against Defendants related to or arising out of their contracts and compel all claims in Plaintiffs' Complaint to arbitration and dismiss this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 & 4, and Federal Rule of Civil Procedure 12(b)(6).[6]

Under well-established Third Circuit and Florida precedent, Plaintiffs each entered into a valid and enforceable arbitration agreement for all claims, including "any dispute relating to any matter arising under this Agreement or any dispute concerning the performance, application or interpretation of any provision of this Agreement (including, without limitation, the application of this Section 16 to any dispute)." (*See, e.g.*, Ex. A to Compl. at § 16.1). Each of Plaintiffs' claims arises out of the same transaction or occurrence and all claims involve a common nucleus of operative fact such that the interests of justice require them to be tried together. Accordingly, Plaintiffs expressly waived their rights to pursue claims in a judicial forum and this Court should compel arbitration of Plaintiffs' claims and dismiss, or stay, this action in its entirety.[7]

---

[6] The "arbitrability of Plaintiffs' claims are apparent on the face of the Complaint because the Complaint contemplates the nature of the relationship between Plaintiffs and Defendants," which is governed in part by the Arbitration Agreement. *Nelson v. Gobrands, Inc.,* No. 20-cv-5424, 2021 WL 4262325, at *4 (E.D. Pa. Sept. 20, 2021). As a result, the Federal Rule of Civil Procedure 12(b)(6) standard applies to Defendants' Motion. *Id.*

[7] Defendants recognize that after deciding a motion to compel arbitration, the Court cannot dismiss the case if "one of the parties applies for a stay pending arbitration." *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004); *accord Smith v. Spizzirri*, 601 U.S. 472, 474 (2024). Because neither party has yet applied for a stay, Defendants respectfully submit that dismissal is appropriate unless and until Plaintiffs request a stay.

A.      **The FAA Mandates Enforcement of Plaintiffs' Arbitration Agreements.**

As the U.S. Supreme Court has stated: "An order to arbitrate [a] particular [dispute] should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Under the FAA, arbitration clauses like the one at issue here "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In enacting section 2 of the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011), the FAA declares a liberal policy favoring the enforcement of arbitration policies, stating: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In enacting the FAA, Congress sought to overcome widespread judicial hostility to the enforcement of arbitration agreements. *See Hall St. Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). The FAA permits private parties to "trade[] the procedures . . . of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). To this end, the FAA not only places arbitration agreements on equal footing with other contracts, but amounts to a "congressional declaration of a liberal federal policy ***favoring*** arbitration agreements." *Perry v. Thomas*, 482 U.S.

18

483, 489 (1987) (quoting *Moses H. Cone v. Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24

(1983)) (emphasis added); *Direct TV, Inc. v. Imburgia*, 577 U.S. 47, 136 S. Ct. 463, 468 (2015)

("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative

interpretation of that Act"). Accordingly, where, as here, an enforceable agreement to arbitrate is

present, federal and state public policy unequivocally favor arbitration.

> **B.**     **The Parties Entered Into Valid and Binding Arbitration Agreements
> for Any Disputes Arising Out of Their Agreements with AEW,
> Including All Claims Alleged in This Suit.[8]**

In order to compel a matter into arbitration, a court need only engage in a limited review to

determine: (1) whether the parties have entered into a valid agreement to arbitrate their claims; and

(2) whether the plaintiff's claims fall within the scope of the agreement to arbitrate. *See Mitsubishi

Motors*, 473 U.S. at 626-28; *Sarbak v. Citigroup Global Markets, Inc.*, 354 F. Supp. 2d 531, 538

(D.N.J. 2004). These inquiries are governed by state contract law but must also be guided by the

strong public policies favoring arbitration codified in the FAA. *Volt Information Sciences, Inc. v.

Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989). Any doubts as to arbitrability are to be

resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25.

> **1.**     **The Arbitration Agreements Unequivocally and Indisputably
> Delegates the Threshold Issue of Arbitrability to the Arbitrator.**

Before addressing the two threshold inquiries outlined above, however, the Court must

examine the underlying contracts to determine whether the parties have agreed to commit the

threshold question of arbitrability to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S.

---

[8] Pursuant to Section 17.8 of Plaintiffs' Agreements, Florida law applies to substantive issues arising from Plaintiffs' contract-related claims. *See Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Moreover, Plaintiffs effectively concede as much because they do not challenge Section 17.8 in any of their claims for declaratory judgment regarding other provisions of their agreements. Therefore, Defendants will apply Florida law for the purposes of the arbitration analysis.

63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) ("the issue of the contract's validity is considered by the arbitrator in the first instance"). Accordingly, under *Rent-A-Center*, courts should not address the threshold question of arbitrability where it has been delegated to the arbitrator pursuant to the underlying agreement. *See S. Jersey Sanitation Co. v. Applied Underwriters Captive Risk Assur. Co.*, 840 F.3d 138, 143 (3d Cir. 2016).

Here, the Court needs to look no further than the plan language of Section 16.1 of the agreements themselves, which provide in pertinent part: "any dispute relating to any matter arising under this Agreement **or any dispute concerning the performance, application or interpretation of any provision of this Agreement** (**including, without limitation, the application of this Section 16 to any dispute**), shall be resolved for final, binding, and conclusive arbitration." (*See, e.g.,* Ex. A to Compl. at § 16.1) (emphasis added). Therefore, the parties unequivocally and exclusively delegated the threshold issue of arbitrability to the arbitrator, as evinced by the plain language of the agreements. *See S. Jersey Sanitation Co.*, 840 F.3d at 143-44.

However, the arbitration agreements also expressly incorporate the JAMS Comprehensive Arbitration Rules and Mediation Procedures, which also unequivocally and expressly delegate the threshold issue of arbitrability to an arbitrator. (*See, e.g.*, Ex. A to Compl. at § 16.1 ("any dispute relating to any matter arising under this Agreement or any dispute concerning the performance, application or interpretation of any provision of this Agreement . . . shall be resolved for final, binding, and conclusive arbitration conducted before a single arbitrator in Duval County, Florida

and administered by JAMS, Inc. pursuant to its Comprehensive Arbitration Rules and Procedures."))

Rule 11(b) of the JAMS Comprehensive Arbitration Rules states in relevant part that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *See* https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11 (last accessed on October 7, 2024). Therefore, based on the express delegation clause in Section 16.1 of the agreements and the incorporation of the JAMS Comprehensive Rules, any question as to the validity of the arbitration agreements, including whether the JAMS Rules apply to this dispute, has been delegated to, and must be decided by, an arbitrator.

Indeed, numerous courts, including in the Third, Fifth, Sixth, and Eleventh Circuits, have found that, by incorporating the arbitration rules that are not appended to an arbitration agreement itself, but included via reference like in this case, the parties have clearly and unmistakably committed to delegating the question of arbitrability to the arbitrator. *See Richardson v. Coverall N. Am., Inc.,* No. 18-3393, 811 F. App'x. 100, 2020 U.S. App. LEXIS 13568, at *4-5 (3d Cir. April 28, 2020); *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019); *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 553 (5th Cir. 2018); *HealthPlanCRM, LLC v. AvMed, Inc.*, No. 19-157-NR, 458 F. Supp. 3d 308, 2020 U.S. Dist. LEXIS 74187, at *3 (W.D. Pa. April 28, 2020); *Ins. Newsnet.com, Inc. v. Pardine*, No. 11-00286, 2011 U.S. Dist. LEXIS 85825, at *9-10 (M.D. Pa. Aug. 4, 2011); *Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.*, 670 F. Supp. 2d 1350, 1354 (S.D. Fla. 2009) (quoting *Terminix Intern. Co., LP v. Palmer Ranch Ltd.*

*Partnership,* 432 F.3d 1327, 1332 (11th Cir. 2005)) ("[W]hen ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); *see also Githieya v. Glob. Tel\*Link Corp.,* No. 1:15-CV-0986-AT, 2016 U.S. Dist. LEXIS 8573, 2016 WL 304534, at \*4 (N.D. Ga. Jan. 25, 2016) (holding that the contract's delegation clause unmistakably allocated questions of enforceability to the arbitrator); *see also Caracas v. Rizen Fleet Logistics,* 2016 U.S. Dist. LEXIS 203908 (S.D. Fla. 2016) (Court stayed proceedings and compelled employment claims to arbitration, stating, "[h]aving reviewed the contractual language of the Independent Contractor Agreement in its entirety—including the Streamlined Arbitration Rules of JAMS which were incorporated by reference—the undersigned concludes that the parties agreed that the arbitrator— not the court —would determine whether the Plaintiffs' claims are arbitrable and whether the terms of the agreement are enforceable.").

Although Plaintiffs claim the arbitration agreement is unconscionable in Count I of the Complaint, they do not challenge and cannot overcome the threshold issue that, pursuant to the JAMS Comprehensive Rules, whether or not Plaintiffs claims are arbitrable is a question for an arbitrator—not the court. Importantly, when an arbitration agreement contains an express and valid delegation clause, as it does here, "a 'motion to compel arbitration should be granted in almost all cases.'" *Adler v. Gruma Corp.*, 2023 U.S. Dist. LEXIS 202610, at \*24 (D.N.J. Nov. 13, 2023) (quoting *Maravilla v. Gruma Corp.* 783 F. App'x 392, 395 (5th Cir. 2019)). In *Adler*, the court cited to the Fifth Circuit for the widely accepted principle that:

> Courts first look to see if an agreement to arbitrate has been formed, then determine if it contains a delegation clause. If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, [courts] will consider the clause to be valid and compel arbitration. Challenges to the arbitration agreement as a whole are to be heard by the arbitrator.

*Id.* (quoting *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018)).

In that case, the Court focused its analysis on *whether an agreement to arbitrate had been formed—not whether any defenses to enforcement, such as unconscionability, had been asserted*. *Id.* Plaintiffs do not, and cannot, raise any such formation defenses here. Therefore, the arbitrability of their claims must be decided in arbitration. Notably, Plaintiffs did not plead a single declaratory judgment count alleging that no agreement to arbitrate had been formed between the parties. Moreover, Plaintiffs effectively concede via omission that there are no formation issues. Like in *Adler,* Plaintiffs challenge *only whether the Arbitration Agreements are enforceable*. However, that issue—like with any arguments Plaintiffs raise with respect to the threshold issue of arbitrability—are for an arbitrator, and not the Court, to decide. *Id.* at * 25 ("[T]he adoption of specific arbitration rules—such as JAMS—shows that a party knowingly intended to arbitrate gateway issues of arbitrability.") (internal citations and quotation marks omitted). Accordingly, this Court should dismiss Plaintiffs' claims without prejudice to Plaintiffs' ability to address, in arbitration, the threshold issue of arbitrability.

### 2. The Agreements to Arbitrate are Valid.

Even if the Court were to proceed to determine the enforceability and interpretation of the arbitration agreements, both of the "gateway" issues have been satisfied here, and thus, Plaintiffs' claims should be compelled to arbitration and this action dismissed or, in the alternative, stayed.

First, there are valid agreements to arbitrate. General contract law principles apply to the interpretation and enforcement of arbitration agreements. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Courts look to the relevant state contract law when determining whether the parties entered into a valid and enforceable agreement to arbitrate. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F. 3d 513, 524 (3d Cir. 2009) (citing *Kaplan*,

514 U.S. at 944). Under Florida law, a valid contract exists where offer, acceptance, and consideration are established. *See, e.g., Pope v. Munroe Reg'l Med. Ctr.,* 2005 U.S. Dist. LEXIS 45871, at * 6 (M.D. Fla. Aug. 1, 2005). An arbitration agreement is enforceable against a signatory to the agreement where, as here, there was offer, acceptance, and sufficient specification of essential terms. *See Jones v. Sallie Mae, Inc.,* No. 3:13-cv-837-J-99-MMH-MCR, 2013 U.S. Dist. LEXIS 170969, *9-12 (M.D. Dist. Fla. Dec. 4, 2013), *adopting report and recommendation at* 2013 U.S. Dist. LEXIS 170968.

As explained above, Plaintiffs do not challenge the initial formation of the agreements, nor do they assert in their lawsuit any formation challenges, which is telling here. Moreover, even if they did challenge formation, Plaintiffs are unable to dispute that offer, acceptance, consideration, and essential terms have been established. Plaintiffs and AEW each signed the agreements, the agreements offer monetary compensation in exchange for Plaintiffs' services as Wrestlers or Non-Wrestling Talent, the agreements are sufficiently detailed to include all essential terms of performance, and the dispute resolution provisions plainly detail to Plaintiffs under what circumstances arbitration is to be conducted, where it is to be conducted, and how it is to be conducted. (*See, e.g.*, Ex. A to Compl. at § 16.1). Accordingly, the Court should find that the arbitration agreements are valid and, therefore, enter an Order dismissing this case and compelling Plaintiffs' to arbitrate all of their claims asserted herein.

### 3.     All of Plaintiffs' Claims are Arbitrable.

As for the second inquiry, the arbitrability of all of Plaintiffs' claims is obvious from the plain language of the arbitration agreements and the factual allegations of Plaintiffs' Complaint, such that each claim falls squarely within the scope of the arbitration agreements. Therefore, dismissal of this action is required. *See Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n*

*Ltd.*, 108 F. App'x 35, 38 (3d Cir. 2004); *Seus v. John Nuveen & Co.*, 146 F.3d 175, 179 (3d Cir. 1998) (citing *Dancu v. Coopers &Lybrand*, 778 F. Supp. 832, 835 (E.D. Pa. 1991)); *see also* 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."). Each of the Complaint's nine counts arises out of the creation, performance, or termination of Plaintiffs' contracts with AEW. Specifically Counts I through V, VII, and VIII all expressly relate to the subject contracts by their very nature. Further, Counts VI and IX both are so interrelated to the termination of Plaintiffs' contracts and the work that Plaintiffs performed for AEW as Wrestlers or Non-Wrestling Talent that they can be said to, at the very least, "relate to" the contracts with AEW. For example, Plaintiffs Brandon and Brent Tate allege that Defendant Khan made false or defamatory statements about the reasons for terminating their contracts. (*See* Compl. at ¶¶ 260-61). Plaintiff Foote alleges that Defendant Riccaboni's allegedly defamatory statements violated AEW's social media policy, and, ultimately, led to a series of events culminating in AEW terminating Foote's contract. (*See* Compl. at ¶¶ 222-35). Therefore, all of Plaintiffs' asserted claims "arise out of or relate to" their contracts with AEW.

### 4.    The Arbitration Agreements are not Unconscionable.

Defendants anticipate that Plaintiffs will respond to this Motion arguing that the Court cannot compel arbitration because Plaintiffs have asserted in Count I that the arbitration agreements are void because they are unconscionable. (*See* Compl. at ¶¶ 122-53). Defendants presume that Plaintiffs filed this declaratory judgment action seeking to render the arbitration agreements invalid as a means of circumventing the arbitration requirements to which they previously agreed, and, more specifically, to circumvent the fact that all threshold issues of

arbitrability should be determined by an arbitrator, and not the Court. Considering that federal law weighs heavy in favor of agreements to arbitrate and arbitration in general, this cannot stand. Accordingly, the Court should conclude that Count I of Plaintiffs' Complaint for Declaratory Judgment Finding the Arbitration Clause Invalid fails to state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6), or that it fails as a matter of law under Federal Rule of Civil Procedure 56.[9]

Under Florida law, to make an unconscionability finding, Plaintiffs must prove that the arbitration agreements are both procedurally and substantively unconscionable. *See Lambert v. Signature Healthcare, LLC*, No. 19-11900, 2022 U.S. App. LEXIS 18787, at *12-17 (11th Cir. July 8, 2022) (collecting authority and applying Florida law). "The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st Dist. Ct. App. 1999).

In determining whether a party lacked a meaningful choice, Florida courts look to the totality of the circumstances, considering factors such as:

> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

---

[9] The Court may make this finding under either Federal Rule of Civil Procedure 12(b)(6), or under Federal Rule of Civil Procedure 56 if evidence outside of the four corners of the Complaint and its attachments is required. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013). If further evidence is required, Defendants respectfully request that the Court allow an opportunity to conduct limited discovery on this issue and provide supplemental briefing as necessary.

*Hobby Lobby Stores, Inc. v. Cole*, 287 So. 3d 1272, 1275 (Fla. 5th Dist. Ct. App. 2020) (quoting *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010)).

Although Plaintiffs assert as much in the Complaint, and will likely do so in response to this Motion, the mere fact that an arbitration agreement is presented on a take-it-or-leave-it basis (*i.e.*, that it is a contract of adhesion) is not dispositive. *Id.* Even when an arbitration agreement is a condition of employment or, in this case, an independent contractor relationship, "courts should explore the circumstances surrounding the execution of an arbitration agreement before concluding it is procedurally unconscionable." *Hobby Lobby Stores*, 287 So. 3d at 1276. In such circumstances, Florida courts focus on: (1) a plaintiff's ability to understand an arbitration agreement; (2) a defendant's efforts to pressure a plaintiff or discourage a plaintiff from asking questions; and (3) the presentation of the agreement and the size of the print. *See, e.g.*, *id.* at 1276.

For example, in *Hobby Lobby Stores*, the court held that an arbitration agreement was not procedurally unconscionable because the employee made "no allegation that he lacked a full and fair opportunity to inquire into the Agreement's terms or to enlist help if confused" and the "operative terms [were] not hidden, minimized, or buried in fine print." *Id.* Likewise, Plaintiffs make no such allegation here, and they are unable to do so. Although Plaintiffs may now take issue with the forum in which relief is available to them pursuant to the arbitration agreements, they had every opportunity to ask AEW questions or to seek legal advice regarding the arbitration provision.

Indeed, Plaintiffs Brandon and Brent Tate are professional wrestlers and Plaintiff Foote is a professional wrestling commentator. Thus, each of the named Plaintiffs, in addition to those in the putative class, have entered into similar independent contractor agreements with other wrestling organizations, which likely contain similar arbitration agreements, because this is an industry-standard practice. *See* **Exhibit B** at ¶ 10; **Exhibit C** at ¶ 6. Moreover, Plaintiffs make no

allegation that essential terms of the agreement were hidden from them or that any intimidation tactics were used, nor can they. The contracts between Plaintiffs and AEW, including the arbitration agreements, were entered into freely and willingly by sophisticated parties with significant knowledge of the applicable industry standards. Plaintiffs had a free choice to either negotiate the agreements, retain counsel to do so, or explore options with one of several other wrestling promotions, yet they elected to sign contracts with AEW. Therefore, the arbitration agreements are not procedurally unconscionable, and the Court may stop its analysis here. *See Lambert*, 2022 U.S. App. LEXIS 18787 at *21.

However, even assuming *arguendo* that the arbitration agreements are procedurally unconscionable, which they are not, there is nothing within the arbitration agreements that renders them substantively unconscionable, either. A contract is substantively unconscionable when it contains terms that are "***unreasonably** favorable to the other party.*" *Basulto v. Hialeah Auto*., 141 So.3d 1145, 1157-58 (Fla. 2014) (emphasis in original) (additional emphasis added) (internal citations and quotation marks omitted). While it is unclear precisely which of Plaintiffs' allegations concern substantive unconscionability, Defendants assume that Plaintiffs primarily take issue with the fact that arbitration precludes them from seeking relief in a judicial forum. However, such an argument would be insufficient because the arbitration agreements do not prevent Plaintiffs from obtaining the relief they are seeking, and to the extent that Plaintiffs are later able to assert that the arbitration proceedings were somehow deficient, they are able to return to a judicial forum to seek recourse. *See, e.g., Scharf v. Bitwarden*, No. 3:23-cv-633, 2024 U.S. Dist. LEXIS 59664, at *28 (M.D. Fla. Feb. 9, 2024) (holding that an arbitration clause in a stock option agreement was not substantively or procedurally unconscionable because it did not entirely preclude the plaintiff from seeking judicial recourse).

28

Further, gleaning from the Complaint that Plaintiffs may also take issue with certain perceived one-sided terms in their contracts as a whole, nothing contained within the arbitration agreements rises to the level of being **unreasonably** favorable as required by *Basulto*. *See Basulto*, 141 So.3d at 1157-58; *see also, e.g.*, *Solis v. Am. Express Nat'l Bank*, No: 5:23-cv-208, 2023 U.S. Dist. LEXIS 118901, at *13-16 (M.D. Fla. July 11, 2023) (holding that the plaintiff failed to meet the burden to show that an arbitration agreement was substantively unconscionable under Florida law where the agreement limited itself to disputes directly relating to the agreement or work performed under the agreement, it did not limit the types of damages available in arbitration, it did not deprive the plaintiff of a means to vindicate a statutory cause of action, and it provided that either party could compel arbitration). Moreover, it is not enough that the arbitration agreements provide AEW with the discretion to adjudicate disputes or violations of its own rules. *See* Compl. at ¶ 143. To the extent that a disputed AEW rule or policy also constitutes a statutory cause of action, Plaintiffs could seek relief therefor in another appropriate forum, such as arbitration or in court, as necessary. *See Solis*, 2023 U.S. Dist. LEXIS 118901, at *13-16. Accordingly, this Court should find that the arbitration agreements are not procedurally or substantively unconscionable under Florida law, and dismiss Count I of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See Lambert*, 2022 U.S. App. LEXIS 18787 at *19-21 (reversing a district court's finding that an arbitration clause was procedurally and substantively unconscionable because the plaintiff had a choice to apply to jobs while drawing from her retirement although she "felt pressured to sign documents" because of her financial situation).

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). In

the alternative, Defendants respectfully move for an order transferring venue to the Middle District

of Florida, Jacksonville Division, or dismissing this case pursuant to Federal Rule of Civil

Procedure 12(b)(6), and compelling Plaintiffs to arbitrate all claims against Defendants.

Respectfully submitted,

Dated: October 11, 2024

**JACKSON LEWIS P.C.**

By:    */s/ Daniel F. Thornton*
B. Tyler White*
Tyler.White@jacksonlewis.com
James D. McGuire*
James.McGuire@jacksonlewis.com
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
904-638-2655

Daniel F. Thornton (PA No. 318431)
Daniel.Thornton@jacksonlewis.com
Caralyn M. Reese (PA No. 330726)
Caralyn.Reese@jacksonlewis.com
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
267-319-7802

*Counsel for Defendants*

*admitted pro hac vice

30