## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN FOOTE (aka Kevin Kelly),     :
Individually and on behalf of       :  Civil Action No. 2:24-cv-05351
all others similarly situated;   et al   :  (Judge Perez)
                                     :
                                     :
                                     :
                    Plaintiffs,   :
                                       :
    v.                              :
                                       :
ALL ELITE WRESTLING, LLC; et al   :
                                     :
                    Defendants.  :

---

## PLAINTIFFS RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TRANSFER VENUE, OR COMPEL ARBITRATION AND DISMISS PLAINTIFFS' COMPLAINT

---

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Addit, LLC v. Hengesbach*,
341 So. 3d 362 (Fla. 2d DCA 2022) ...........................................................14

*Bombin v. Sw. Airlines Co.*,
529 F. Supp. 3d 411 (E.D. Pa. 2021) ..........................................................10

*Collins v. Mary Kay, Inc.*,
874 F.3d 176 (3d Cir. 2017)........................................................................10

*Flowers v. Smith*,
12 Pa.D.&C.3d 434 (C.P. Fayette 1979).....................................................10

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79, 92 121 S. Ct. 513, 148 L.Ed.2d 373 (2000)............................15

*Halpern v. Centroid Sys.*,
No. 2:24-cv-07037, 2024 U.S. Dist. LEXIS 190609 (D.N.J. Oct. 21, 2024) ................................8

*Hous. & Redevelopment Ins. Exch. v. Guy Carpenter & Co., LLC*,
No. 3:23-CV-0996, 2024 U.S. Dist. LEXIS 53046 (M.D. Pa. Mar. 25, 2024) ...........................10

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995)...........................................................................12

*Kohler v. Pennsylvania*,
438 F. App'x 120, (3d Cir. 2011)...................................................................9

*Powerhouse Commc'ns, LLC v. Midstate Commc'n Contractors, Inc.*,
No. 1:24-CV-00565, 2024 U.S. Dist. LEXIS 169830 (M.D. Pa. Sep. 20, 2024) ..........................8

*Scarlett v. Mason*,
2014 PA Super 76, 89 A.3d 1290 .................................................................11

*Schultz Builders & Pools, Inc. v. Icon Welding & Fabrication, LLC*,
370 So. 3d 355, 48 Fla. L. Weekly 1381 (Dist. Ct. App. 2023) ...................11

*Steuart v. McChesney*,
498 Pa. 45, 444 A.2d 659 (1982)..................................................................11

*Venn Therapeutics, LLC v. CAC Pharma Invs., LLC*,
382 So. 3d 6, 49 Fla. L. Weekly 509 (Dist. Ct. App. 2024) ........................12

**Statutes**

9 U.S.C. § 2 .................................................................................................................14

28 U.S.C. § 1391 ....................................................................................................8, 9

28 U.S.C. § 1404 .........................................................................................................14

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN FOOTE (aka Kevin Kelly), | : | |
| Individually and on behalf of | : | Civil Action No. 2:24-cv-05351 |
| all others similarly situated; | : | (Judge Perez) |
| | : | |
| | : | |
| BRANDON TATE, Individually and | : | |
| on behalf of all other similarly situated; | : | |
| | : | |
| | : | |
| BRENT TATE, Individually and | : | |
| on behalf of all other similarly situated | : | |
| | : | : |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ALL ELITE WRESTLING, LLC; | : | |
| | : | |
| | : | |
| IAN RICCABONI; | : | |
| | : | |
| TONY KHAN | : | |
| | : | |
| Defendants. | : | |

---

## PRELIMINARY STATEMENT

Plaintiffs Kevin Foote ("Kevin"), Brandon Tate ("Brandon"), and Brent Tate ("Brent") initiated this putative class action seeking a declaration that they and other putative class members are employees of Defendant All Elite Wrestling, LLC ("AEW") and not independent contractors. Moreover, they seek to have this Court declare that their rights and the rights of other putative class members may be vindicated in a court by a jury rather than in a procedurally unfair and clandestine arbitration.

1

Plaintiffs also seek a determination on behalf of themselves and all other similarly situated that the restrictive covenant in each of their agreements is unenforceable. Under these agreements, Plaintiffs are not only restricted from performing services for other entities and earning an income during the time they are providing services to AEW, but also each of the agreements attempts to prevent Plaintiffs from engaging in their professions after the early termination of the agreement by Defendant AEW.

Further, each of these Plaintiffs individually seek damages for the breach of each of their respective agreements with Defendant AEW resulting from the wrongful termination of the agreements by Defendant AEW.

Kevin also seeks damages against Defendant AEW and Defendant Ian Riccaboni ("Riccaboni") for his state law claims of defamation and false light. State law claims are also asserted against Defendant Riccaboni and Defendant AEW for tortious interference with business or contractual relationship.

Brandon and Brent assert state law claims against Defendant Tony Khan ("Khan") for defamation and false light.

These individual claims seek to recover for the devastating impact that the actions of each Defendant had and continue to have on the personal, professional, and financial lives of each of the Plaintiffs.

## PROCEDURAL HISTORY

Plaintiffs initiated this action in the Court of Common Pleas of Philadelphia County, Pennsylvania on August 30, 2024. All Defendants filed a Notice and Petition for Removal of the action [ECF 1] with this Court on October 24, 2024 citing the Class Action Fairness Act set forth in 28 U.S.C. § 1332, federal question jurisdiction pursuant to 28 U.S.C. § 1331, and

supplemental jurisdiction under 28 U.S.C. § 1367. On October 11, 2024, Defendants filed *Defendants' Omnibus Motion to Dismiss Plaintiffs' Complaint for Improper Venue or, in the Alternative, Transfer Venue, or Compel Arbitration and Dismiss Plaintiffs' Complaint* ("*Motion*") [ECF 11]. Plaintiffs are timely filing this *Response in Opposition* pursuant to an extension of time to respond. [ECF 17].

## STATEMENT OF ALLEGED FACTS

Plaintiff  Kevin resides in Dillsburg, Pennsylvania and is a professional wrestling commentator.  *Complaint* ("*Compl* ) [ECF1-2] at ¶¶ 1-2. Plaintiffs Brandon and Brent are residents of Knoxville, Tennessee and are a professional wrestling tag team. *Compl.* [ECF1-2] at ¶¶ 3-5. Unfortunately, these Plaintiffs entered into agreements with Defendant AEW, a professional wrestling promotion company providing wrestling entertainment and engaging in the promotion and sale of wrestling-related merchandise. *Id.* at ¶ 7.  AEW is a Delaware limited liability company with its principle place of business in Florida. *Id.* at ¶ 6. Defendant Riccaboni resides in Allentown, Pennsylvania and is a professional wrestling commentator. *Id.* at ¶¶ 8-9. Defendant Khan is the Chief Executive Officer of AEW and is a resident of Florida. *Id.* at ¶ 10.

Kevin signed a document titled <u>All Elite Wresting Independent Contractor Talent Agreement</u> ("Talent Agreement") and the Tates each signed a document titled <u>All Elite Wrestling Independent Contractor Wrestler Agreement</u> ("Wrestler Agreement"). *Id.* at ¶¶ 26, 57. The Talent Agreement and the Wrestler Agreement are essentially the same, with only insignificant alterations. The two Agreements will be addressed collectively ("Agreements"), unless otherwise appropriate. While AEW contends that the Plaintiffs were independent contractors, even a cursory review of the agreements leads to the inescapable conclusion that all Plaintiffs were employees of AEW. Plaintiffs seek a determination that they and those similarly

3

situated were misclassified as independent contractors when they were, in fact, employees. *Id*. at ¶¶ 154-171. They also seek compensatory damages as a result of the misclassification. *Id*.

Nonetheless, the Wrestling Agreement provided that AEW had the ability to review and approve (or not) the Wrestler's performance. *Id.* at ¶ 65. Plaintiffs were required to provide services only to AEW and/or only provide services to other professional wrestling companies with AEW's approval. *Id.* at ¶ 73.

Plaintiffs made allegations with respect to the Arbitration provisions, Section 16.1, in the Agreements that sufficiently establish that the Agreements are unenforceable. The Arbitration provisions do not contain a severability clause, while the Agreements contain a severability clause in Section 17.5. *Id.* at ¶¶ 125-126. AEW admits the Agreements are standardized contracts. *Id.* at ¶ 127; *Motion* [ECF 11] at p. 27 ("Thus, each of the named Plaintiffs, in addition to those in the putative class, have entered into similar independent contractor agreements with other wrestling organizations, which likely contain similar arbitration agreements, because this is an industry-standard practice."). By this statement, AEW also indites the entire wrestling industry in the misclassification of employees as independent contractors.

AEW's speculative statements regarding all the contracts that all of the Named Plaintiffs or putative class members may have signed is not evidence of Plaintiffs' familiarity with arbitration clauses. In fact, Plaintiffs specifically allege that none of the Plaintiffs are familiar with arbitration clauses. *Compl.* [ECF1-2] at ¶ 127.

The Agreements are offered on a "take it or leave it basis." *Id.* at ¶ 128. The Arbitration Agreement was not pointed out to Plaintiffs. *Id.* at ¶ 129. None of the Plaintiffs were afforded the opportunity to negotiate the Arbitration. *Id.* at ¶ 130. AEW never states that the Arbitration provisions were negotiable; only that Plaintiffs could have asked questions or sought advice

regarding the Agreements. *Motion* [ECF 11] at p. 27. AEW never states that the clauses were negotiable. Plaintiffs specifically allege that they were not afforded the opportunity to negotiate the Arbitration Agreements. *Compl.* [ECF1-2] at ¶ 130.

The Plaintiffs were not provided with a copy of the Comprehensive Arbitration Rules and Procedures of JAMS, Inc. ("JAMS", the designated administrator of the Arbitration. *Id.* at ¶ 132. The Arbitration location is to be held in Florida. Plaintiffs are residents of Pennsylvania and Tennessee and the Agreements were not signed in Florida. *Id.* at ¶ 133-134. Brandon and Brent were told not to complain about certain issues so that they could obtain Agreements with AEW. *Id.* at ¶ 135.

The substantial costs of arbitrating a dispute were not explained and Plaintiffs were not advised of the costs of arbitration. *Id.* at ¶¶ 136-137. In fact, the costs of any arbitration are still unknown. Apparently, for three or more parties the filing fee is $3,500 to be paid prior to the commencement of the proceedings.[1]  Additionally, a Case Management Fee of 13% is "assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation."[2] Moreover, the "Professional Fees," or hourly rate for the individual arbitrator, can only be determined after arbitration is initiated by calling a case manager.[3]

Plaintiffs were not advised that the discovery process in arbitration is severely limited; they would have to seek permission to file a dispositive motion; and, the proceedings could be terminated or suspended or failure to pay any fees or expenses in full. *Id.* at ¶¶ 138-140. No provision exists for an individual financially unable to proceed with the arbitration. *Id.* at ¶ 141.

---

[1] JAMS Arbitration Schedule of Fees and Costs (https://www.jamsadr.com/arbitration-fees) (accessed October 31, 2024).
[2] *Id*.
[3] *Id*.

Plaintiffs are purportedly prohibited Talent from challenging the validity, legality, or enforceability of this Agreement or any of the terms set forth herein. *Id.* at ¶ 142.

Moreover, the Agreement excludes from Arbitration the application, interpretation, or enforcement of any AEW Rule. *Id.* at ¶ 143. These Rules are attached as Exhibit E to the *Complaint* [ECF 1-2].

Not only do Plaintiffs seek to invalidate the Arbitration provisions, Plaintiffs also seek to invalidate the Restrictive Covenant that attempts to prevent them from working in their professions for the duration of their respective Agreements. *Id.* at ¶¶ 172-181. Specifically, Plaintiffs allege that AEW economically benefits from the goodwill and expertise that Talent and Wrestlers gain prior to their employment by AEW such that any retention of that benefit beyond the time that Talent or Wrestlers perform services for AEW is unwarranted. *Id.* at ¶ 179.

With respect to Plaintiffs' personal claims, which Defendants deem to be inconsequential, Plaintiffs seek to recover for damages resulting from the various Defendants' actions that adversely impacted Plaintiffs.

Each of the Plaintiffs seek compensation for AEW's alleged breach of each of the Agreements. *Id.* at ¶¶ 182-203. The damages they seek include, but are not limited to royalties and unreimbursed for travel expenses. *Id.* at ¶¶ 189-190, 200-203. Travel and reimbursement for expenses are addressed in Exhibit G to AEW's Rules. *Id*. at Ex. E. The amount of compensation under each of the Agreements that Plaintiffs seek as damages is not insubstantial. *Id.* at Exs. A and B.

AEW wrongfully terminated the Talent Agreement on March 6, 2024. *Id.* at ¶ 186. Prior to the termination of the Agreement, Defendant Riccaboni make a false and defamatory statement on Discord™, a social media platform on X™ that Kevin was promoting QAnon

movies. *Id.* at ¶¶ 207, 211-213. Defendant Riccaboni published the statements in Pennsylvania with knowledge of or in reckless disregard for their falsity. *Id.* at ¶¶ 218-219.

Kevin made a complaint to AEW regarding Defendant Riccaboni's post claiming a violation of AEW's social media policy. *Id.* at ¶¶ 224-225. Subsequent to the post and the complaint, AEW began to reduce the number of times that Kevin provided announcing services. *Id.* at ¶¶ 226-227, 233-234. Subsequently, Kevin called and left a message for AEW's human resources' department regarding his mistreatment by AEW. *Id.* at ¶¶ 224-225. After that telephone call, Kevin's contract was terminated. *Id.* at ¶ 235. AEW adopted or ratified the defamatory statements published by Defendant Riccaboni by its actions in failing to enforce their policies. *Id.* at ¶ 236. AEW's ratification or adoption is demonstrated by the adverse decisions made with respect to Plaintiff Foote's performance of services for AEW and the eventual termination of the Agreement. *Id.* at ¶ 237.

Kevin further alleges that the statement by Defendant Riccaboni asserting that he had a relationship with or supported QAnon caused or substantially contributed to AEW taking adverse actions against Kevin by decreasing the number of time he served as a commentator for Events and resulted in AEW ultimately terminating the Agreement. *Id.* at ¶ 244. Riccaboni intended to cause a breach of the relationship between Kevin and AEW or knew that his actions were likely to cause a breach of the relationship. *Id.* at ¶ 245.

Moreover, after the termination of the Agreement, Kevin had a potential business opportunity with New Japan Pro Wrestling for a May 6, 2024 event wherein he would provide English commentary for the "All-Together" wrestling event. *Id.* at ¶ 248. Kevin was not retained to do English commentary and, based upon information and belief, AEW prevented him from being hired. *Id.* at ¶¶ 249-250.

AEW wrongfully terminated the Wrestling Agreement on April 1, 2024 purportedly due to budget cuts. *Id.* at ¶ 89. Thereafter, Defendant Khan, President of AEW, stated in an interview that Wrestling Agreement was terminated for not showing up for events. *Id.* at ¶ 90. Brandon and Brent allege that his statement is demonstrably unproven and false. *Id.* at ¶ 225. Brandon and Brent have not had a wrestling engagement since the Agreement was terminated, despite numerous attempts to be booked. *Id.* at ¶ 266. At the time this statement was made, Defendant Khan was in Philadelphia, Pennsysylvania and the statement was made during the ROH Supercard of Honor press event. *Id.* at ¶ 91.

As a result of the wrongful actions by the Defendants as alleged in Counts IV though IX of the *Complaint* Plaintiffs allege that they suffered one or more of the following damages: compensation due under the Agreements; royalties; unreimbursed travel expenses; loss of business opportunities; damage to reputation; humiliation; embarrassment; severe emotional distress; lost wages; loss of potential revenue; loss of good will; and, severe emotional distress. (¶¶ 187-188, 189-190, 196-199, 200-203, 239, 246, 252, 267).

In their *Motion,* Defendants argue that all of the claims, including the individual claims of the Plaintiffs are properly venued in Florida despite the fact that the substantial events occurred in Pennsylvania. The Defendants seek dismissal for improper venue or transfer if proper venue exists. Finally, Defendants argue that the Plaintiffs are bound by Arbitration Agreements that are so broad that all claims alleged in the *Complaint* are subject to Arbitration and the action must be dismissed or stayed.

## ARGUMENT

I.     **VENUE IS PROPER**

Defendants contend that venue is improper in this Court relying upon 28 U.S.C. § 1391(b). Defendants removed this action and venue is not determined by 28 U.S.C. § 1391(b). "In cases removed to federal court from state court, venue is proper in 'the district court of the United States for the district and division embracing the place where such action is pending.'" *Halpern v. Centroid Sys.*, No. 2:24-cv-07037, 2024 U.S. Dist. LEXIS 190609, at *21 (D.N.J. Oct. 21, 2024) (citing, 28 U.S.C. § 1441(a) (further citations omitted). Once Defendants filed their *Notice of Removal* [ECF 1] proper venue was established. *Id.* at ** 21-22.

Once a case is removed from state court, any argument under 28 U.S.C. § 1391(b) "is unavailing, because that statue does not govern cases removed from state court." *Powerhouse Commc'ns, LLC v. Midstate Commc'n Contractors, Inc.*, No. 1:24-CV-00565, 2024 U.S. Dist. LEXIS 169830, at *24 (M.D. Pa. Sep. 20, 2024). "Instead, venue in removed cases is governed by 28 U.S.C. § 1441(a). *Powerhouse Commc'ns, LLC v. Midstate Commc'n Contractors, Inc.*, No. 1:24-CV-00565, 2024 U.S. Dist. LEXIS 169830, at *24 (M.D. Pa. Sep. 20, 2024) (citing, *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665, 73 S. Ct. 900, 97 L. Ed. 1331 (1953); *Chesapeake Thermite Welding, LLC v. R.R. Sols., Inc.*, 22-cv-02004, 2024 U.S. Dist. LEXIS 17316, 2024 WL 387687, at *5 (M.D. Pa. Jan. 31, 2024)).

Moreover, "Whether venue was proper below does not affect the exercise of federal subject-matter jurisdiction." *Kohler v. Pennsylvania*, 438 F. App'x 120, 121, n. 1 (3d Cir. 2011) (citations omitted). Defendants' extensive discussion of factual circumstances and the attached affidavits have no bearing on the issue of proper venue.

Defendants are not entitled to dismissal under 28 U.S.C. § 1391(b) on the basis of improper venue.

## II.     TRANSFER IS NOT WARRANTED

Defendants seek transfer of this action to the United States District Court for the Middle District of Florida. Defendants contend that the Agreements contain a "valid forum-selection clause." The only forum-selection clause is contained in the Arbitration Agreement and states that all disputes "shall be resolved for final, binding, and conclusive arbitration conducted before a single arbitrator in Duval County, Florida." *Compl.* at Exs. A and B, § 16.1. This can be interpreted as a forum-selection clause for arbitration, but no indication exists that the parties intended to apply the clause to the entire Agreement for selecting a forum for litigation. In fact, Section 15 of the Agreement, which permits AEW to seek injunctive and equitable relief, but denies Plaintiffs the same rights, no forum-selection clause is included. Thus, Defendants would have this Court interpret the Agreements as applying a forum-selection clause for arbitration to an action seeking injunctive and equitable relief. Such an application is unwarranted.

Further, as Plaintiffs contend that the Arbitration Agreement is unenforceable, thus, the forum-selection clause for arbitration would also be unenforceable and inapplicable to any disputes. In considering a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), a district court "must first determine whether the forum-selection clause is valid and enforceable." *Bombin v. Sw. Airlines Co.*, 529 F. Supp. 3d 411, 416 (E.D. Pa. 2021) (citation and internal quotation marks omitted). The determination of enforceability is governed by federal law and the scope of the clause is determined by state law. *Id.*

A clause is unenforceable when it is "'unreasonable' under the circumstances." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017) (citation and internal quotation marks omitted). The scope of the clause, that is, "whether the claims and parties involved in the suit are subject to the clause" is determined by the principles of contract law. *Hous. &*

10

*Redevelopment Ins. Exch. v. Guy Carpenter & Co., LLC*, No. 3:23-CV-0996, 2024 U.S. Dist. LEXIS 53046, at *14 (M.D. Pa. Mar. 25, 2024) (citations and internal quotation marks omitted).

Plaintiffs address the unconscionability of the arbitration agreement in Section III below and fully incorporate Section III herein.

Additionally, enforcement of the clause would be unreasonable under the circumstances. Not all Defendants are parties to the Agreements. Neither Defendant Riccaboni nor Defendant Khan signed the Agreements. Defendant Khan signed the Agreements on behalf of the limited liability company. He did not indicate any personal consent to arbitration. The claims by Plaintiffs involve defamation and tortious interference against these particular Defendants.

Pennsylvania law would apply to Kevin's claims against Defendants Riccaboni and AEW. "In Pennsylvania the general principle in choice of law situations is that the state's law which has the greatest contacts or the greatest interest in the case would be applicable: *Flowers v. Smith*, 12 Pa.D.&C.3d 434, 436 (C.P. Fayette 1979) (citing, *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A. 2d 796 (1964). Both Kevin and Defendant Riccaboni are residents of Pennsylvania. The statement was made in Pennsylvania. Thus, Pennsylvania has the greatest contacts and the greatest interest in this case. Moreover, the claims for defamation by Brandon and Brent arose from a statement Defendant Khan made in Pennsylvania.

With respect to the claims by Kevin for tortious interference, the same analysis applies to the claim against Defendant Riccaboni. Both parties are residents of Pennsylvania. The wrongful actions of Defendant Riccaboni occurred in Pennsylvania. The detrimental effects of the tortious interference were felt by Kevin in Pennsylvania. With respect to the tortious interference by AEW, Kevin was attempting to obtain a job out of the country while in Pennsylvania and felt the effects of the tortious interference in Pennsylvania. Therefore, Pennsylvania has the greatest

contacts and the greatest interest in the claims by Plaintiffs for defamation and tortious interference.

Moreover, with respect to the breach of contract claims asserted by the Defendants, the breach with respect to Kevin occurred in Pennsylvania. A person's residence is the location where payment is due unless otherwise stated and thus, venue is proper in the location of the residence. *Scarlett v. Mason*, 2014 PA Super 76, 89 A.3d 1290, 1293. "A cause of action for breach of contract accrues, for venue purposes, where the breach occurred." *Schultz Builders & Pools, Inc. v. Icon Welding & Fabrication, LLC*, 370 So. 3d 355, 359, 48 Fla. L. Weekly 1381 (Dist. Ct. App. 2023) (citation omitted).

In these circumstances, the forum selection clause, if one exists, is unenforceable under the circumstances.

Moreover, these claims are not within the scope of the forum-selection clause. The purported clause only provides for "arbitration" in "Duvall County, Florida." Pennsylvania adheres to the principle that the plain meaning governs the parties' intent. *Steuart v. McChesney*, 498 Pa. 45, 50-51, 444 A.2d 659 (1982). Therefore, the conclusion is that the forum-selection clause only applies to the arbitration based upon the plain language. Any other interpretation would expand and alter the terms of the clause. In fact, Defendants specifically ask this Court to alter the terms of the clause by asserting that disputes initiated in a judicial forum be subject to a clause addressing arbitration. *Motion* [ECF 11] at p. 13.

A Court must examine "whether a significant relationship exists between the claim and the agreement containing the arbitration clause" in determining whether claims are subject to arbitration. *Venn Therapeutics, LLC v. CAC Pharma Invs., LLC,* 382 So. 3d 6, 14, 49 Fla. L. Weekly 509 (Dist. Ct. App. 2024) (citations and quotation marks omitted). "A contractual nexus

exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract." *Id*. at 14-15 (citation and internal quotation marks omitted). The claims of defamation and tortious interference against Defendant Riccaboni do not require reference to the Agreements; nor do the claims by Brandon and Brent for defamation. Thus, no connection with Florida exists with respect to these claims.

The claims related to violation of AEW's Rules are excluded from Arbitration, which includes Kevin's Defamation claim and the claims for travel expenses by all Plaintiffs.

Absent a valid forum selection clause, Defendants' modified balancing test is inapplicable.  Defendants have the burden of demonstrating that this properly venued action should be transferred. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Moreover, "the plaintiff's choice of venue should not be lightly disturbed." *Id.* (citation and internal quotation marks omitted).

Applying the private and public factors set forth in *Jumara*,  Plaintiffs choose Pennsylvania as a forum and Defendants prefer Florida as a forum. The claims for compensatory damages arose in states other than Florida. The claims for declaratory and injunctive relief in the putative class action affect numerous states wherein the putative class members reside.

The financial condition of the Plaintiffs favors Pennsylvania as all Plaintiffs have substantially decreased income as a result of Defendants' wrongful actions. Frequent travel out-of-state would be burdensome for Kevin; however, commenting to Pennsylvania or Florida would not be appreciably different for Brandon and Brent. Defendant Khan travels in connection with his position with AEW and has travelled to Pennsylvania for business purposes.

Despite Defendants' contention that witnesses would be located in Florida, the witness regarding Plaintiffs' damages would be located in Pennsylvania and Tennessee as individuals in those states would have the ability to witness the effects of Defendants' actions on Plaintiffs. With respect to records, Plaintiffs believe that all records could be transmitted electronically.

Public interest would be served by a Pennsylvania court deciding issues relative to its residents, Kevin and Defendant Riccaboni. Moreover, Pennsylvania has an interest in determining whether conduct that occurs within its borders is wrongful. All the defamatory statements were made in Pennsylvania and AEW and ROH regularly conduct business within Pennsylvania's borders. A Pennsylvania Court would be familiar with Pennsylvania law and any transferee court would also have to apply the law of different jurisdictions.

Finally Defendant Riccaboni contends that he may incur additional expenses if required to defend in Pennsylvania. This argument is unsupported by any evidence and should be disregarded. Defendants do not even postulate a reason why Riccaboni would incur additional expenses that the defense and indemnification agreement would not cover and he certainly does not need to defend against a class action as no class action is asserted against him.

Frankly, the sole connection to Jacksonville Florida is the principle place of business of AEW who provides its employees, who reside in multiple states, with independent contractor agreements.

Defendants have failed to carry their burden to demonstrate that transfer is proper under 28 U.S.C. 1404(a) and Plaintiffs respectfully request that the motion to transfer be denied.

### III.    THE ARBITRATION AGREEMENTS ARE UNENFORCEABLE.

Plaintiffs contend that the Arbitration Agreements are unconscionable and unenforceable. Thus, Plaintiffs do not have any valid agreements to arbitrate any dispute with any Defendant. Section 2 of the Federal Arbitration Act provides that arbitration agreements are enforceable

except "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

To establish unconscionability, both procedural and substantive unconscionability must exist; however, the determination is made on a sliding scale. *Addit, LLC v. Hengesbach*, 341 So. 3d 362, 366 (Fla. 2d DCA 2022) (citations omitted). Therefore, "'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (citations and internal quotation marks omitted).

The existence of a contract of adhesion, a standardized contract offered on a take it or leave basis, is a significant factor in determining procedural unconscionability. *Id.* at 367. Defendants have admitted that the Arbitration Agreements are contracts of adhesion as they are "industry-wide" practice according to the Defendants. Moreover, Defendants have not indicated that the agreements were subject to negotiation. *Id.* Nor is the arbitration agreement distinguishable from any other clause in the contract. *Id.* These factors are sufficient to establish procedural unconscionability. *Id.*

The *Addir* Court noted that waiver of any attorneys' fees and costs; the provision that forecloses any right to appeal the decision of the arbitrator; and, the provisions limiting discovery were unconscionable. The Court also found unconscionability when one party could proceed in court while another party was precluded from proceeding in court. *Id.* at 368 (denominating this as an "unlevel-playing field" provision). This provision was substantively unconscionable. *Id* The unlevel-playing-field provision is contained in Section 15.1 of the Agreements regarding injunctive and equitable relief.

Moreover, Section 9.2(d) purportedly prohibits Plaintiffs and putative class members from challenging "the validity, legality, or enforceability of this Agreement or any of the terms set forth herein." Thus, AEW seek to deprive Plaintiffs of all remedies with respect to the Agreement.

AEW also attempts to completely deprive Plaintiffs of any legal recourse with respect to AEW's Rules in Section 16.1. Kevin relies upon the Rules in Count VI of the *Complaint*. Further, the Rules govern travel expense reimbursement, which is sought by all Plaintiffs.

The Agreements also purport to allow AEW certain types of damages, but deny these same types of damages to Plaintiffs in Section 14.1.

All of these one-sided provisions establish substantive unconscionability.

Further unconscionability is demonstrated by the use of JAMS, Inc. The United States Supreme Court stated that "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 121 S. Ct. 513, 148 L.Ed.2d 373 (2000). The costs of arbitration are prohibitive and essentially deny Plaintiffs and all those similarly situated a forum in which to seek recovery for their claims.

Initially, for three or more parties the filing fee is $3,500 to be paid prior to the commencement of the proceedings.  Additionally, a Case Management Fee of 13% is assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation.  Moreover, the "Professional Fees," or hourly rate for the individual arbitrator, can only be determined after arbitration is initiated by calling a case manager.

"The company's [JAMS] neutrals charge among the industry's highest fees."[4] The arbitrators' rates range from about $6,000 to $15,000 a day and the average cost is $10,000 to $11,000 a day.[5] Survey results reported in October 2023 demonstrated that arbitrators charge between $375 and $1,125 per hour, with $600 per hour being the mean.[6] Another report of fees from 2017for JAMS's arbitrators indicated that fees ranges from $400 per hour to $15,000 or more per day.[7]

While one may read opinions that arbitration is a cost-saving method, these figures demonstrate that is it cost-prohibitive and unconscionable. None of the Plaintiffs, having be wrongfully deprived of their income and been thwarted in seeking other income lack the financial ability to proceed with arbitration. Thus, they will be deprived of any legal recourse.

Finally, AEW contends that the arbitrator must decide the issue of arbitrability. Plaintiffs alleged that the Arbitration **provisions** are unconscionable and unenforceable. *Compl.* [ECF 1-2] at ¶ 124 (**emphasis added**). These provisions would include the delegation clause. The reasons supporting the unconscionability of the entire Agreement also support the unconscionability of the delegation provision. Most importantly, Plaintiffs cannot afford to pay an arbitrator to determine whether paying substantial fees and costs to an arbitrator is unconscionable.

Plaintiffs respectfully request leave to amend the *Complaint* if this Court finds that the delegation clause is not properly challenged. Further, Plaintiffs respectfully request that the *Motion* be converted to a Motion for Summary Judgment with limited discovery permitted.

---

[4]https://labusinessjournal.com/services/law-legal-attorneys/how-mediation-firm-jams-became-dominant-player/(accessed November 1, 2024).
[5] *Id*.
[6] https://adrtimes.com/how-much-does-arbitration-cost/(accessed November 1, 2024).
[7]https://www.americanbar.org/content/dam/aba/publications/dispute_resolution_magazine/spring2017/3_rothman_trends_in_arbitrator.pdf (accessed November 1, 2024).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny *Defendants'*
*Omnibus Motion to Dismiss Plaintiffs' Complaint for Improper Venue or, in the Alternative,*
*Transfer Venue, or Compel Arbitration and Dismiss Plaintiffs' Complaint* ("*Motion*") [ECF 11],
or, in the alternative grant leave to amend the *Complaint* or convert the *Motion* to a Motion for
Summary Judgment with limited discovery.

Respectfully Submitted,

**INJURY LAW PARTNERS**


**By:**    */s/Benjamin J. Baer*
BENAJAMIN J. BAER
bbaer@injurylawpartners.com
1628 JFK Blvd., Suite 1302
Philadelphia, PA 19103
215.402.5900


*/s/Stephen P. New*
STEPHEN P. NEW*
**STEPHEN NEW & ASSOCIATES**
steve@newlawoffice.com
430 Harper Parker Dr
Beckley, WV 25801

Counsel for Plaintiffs

*admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 1, 2024, I caused a copy of the foregoing document to be

served on the following counsel of record via electronic filing:

B. Tyler White, Esquire
Tyler.White@jacksonlewis.com
James D. McGuire, Esquire
James.McGuire@jacksonlewis.com
JACKSON LEWIS, P.C.
501 Riverside Avenue Suite 902
Jacksonville, FL 32202


Daniel F. Thornton, Esquire
Tyler.White@jacksonlewis.com
Caralyn M. Reese, Esquire
Caralyn.Reese@jacksonlewis.com
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, P A19102


*/s/Benjamin J. Baer*
BENJAMIN J. BAER